UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

GEORGE ALDRIDGE, SR.,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　)　　　　Case No. 1:18 CV 260 RWS
　　　　　　　　　　　　　　　　)
CYNTHIA REESE,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　)

## **MEMORANDUM AND ORDER**

Plaintiff is currently an inmate at the Eastern Reception, Diagnostic &

Correctional Center in Bonne Terre, Missouri.  While incarcerated at Southeast

Correctional Center (SECC) in Charleston, Missouri, plaintiff was placed in a

suicide cell from September 6, 2016 to September 19, 2016.[1]  In this § 1983 action,

plaintiff alleges that the conditions of his confinement while in the suicide cell

violated the Eighth Amendment.  He sues Cynthia Reese, the Chief Mental Health

---

[1] Defendant was on leave from September 6, 2016 to September 11, 2016.  The Court agrees that defendant cannot be held vicariously liable for the conditions of plaintiff's confinement during that period of time.  However, the entirety of plaintiff's conditions of confinement remain relevant background information.  In addition, defendant admits that she reviewed plaintiff's medical records from that time period upon returning and that her medical judgment was informed, in part, by his treatment during that time.  Thus, his conditions of confinement during that period remain relevant, particularly in light of plaintiff's allegation that he informed defendant of the conditions repeatedly upon her return and requested that they be modified and that, despite her ability to modify them, she did not.  In addition, given the degree and nature of the unhygienic conditions alleged by plaintiff, the Court cannot conclude as a matter of law that exposure to these conditions upon defendant's return until plaintiff's release from suicide watch does not constitute a violation of plaintiff's eighth amendment rights.

Provider at SECC, alleging that she placed him in the suicide cell, and that despite his requests, she would not let him leave.[2]  Plaintiff alleges that defendant knew of the conditions in the cell and promised him that they would be rectified, but took no further action.

Both parties have moved for summary judgment.  Because genuine disputes of material fact preclude entry of judgment as a matter of law, the motions for summary judgment will be denied, and this case will be set for trial.[3]

<u>Standards Governing Summary Judgment</u>

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the

---

[2] Defendant correctly notes that plaintiff's complaint did not allege due process and equal protection claims and that plaintiff may not, therefore, raise them in opposition to summary judgment.  *See Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1057 (8th Cir. 2004).  Moreover, the Court also concluded that plaintiff had failed to state any retaliation claim against defendant and declined to issue process on that claim.  (Doc. #9).  The only claim at issue in this case is plaintiff's conditions of confinement claim brought against defendant in her individual capacity.  (Doc. #9).

[3] The Court gave plaintiff until June 8, 2020 to file any reply brief in support of his motion for summary judgment and any additional opposition to defendant's motion for summary judgment.  Plaintiff previously filed a document that responded to defendant's motion for summary judgment  (Doc. 60), and defendant filed a reply brief responding to that document, even though plaintiff later objected to the Court's characterization of that document as an opposition to summary judgment.  Plaintiff did not file either a reply brief in support of his motion or any additional opposition to summary judgment, and his time for doing so has now expired.  However, the Court concludes that the motions are fully briefed as reply briefs are optional and plaintiff's previously filed document demonstrated the existence of genuine factual disputes which preclude entry of summary judgment for either party.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

<u>Background Facts</u>[4]

---

[4] The Court finds these facts for summary judgment purposes only.  Neither party may rely upon this Memorandum and Order to establish any fact at trial.  The facts relating to plaintiff's grievance history are discussed below.

Plaintiff spent 13 days in a suicide watch cell while incarcerated at SECC. During that time, plaintiff alleges that he was denied hygiene items, including soap to wash his hands after using the bathroom, toothpaste, a towel, a wash rag, or a brush, and that he was not permitted to shower.  Because he was denied utensils, plaintiff claims that he was forced to eat his food with his dirty, unwashed hands that were contaminated with human waste.  Plaintiff alleges that his prescription eyeglasses were confiscated and that he was forced to sleep on the cell floor wearing only a smock with no mattress, blanket, mat or sheet, and that mice crawled on him during the night and defecated on him.  He had to request toilet paper[5] and was only given a few squares per day, which he claims were insufficient to meet his needs.  Plaintiff alleges that he told defendant about these conditions, including the mice crawling all over him, and that he was not suicidal and wanted to be taken off suicide watch, but that defendant failed and refused to modify the conditions of his confinement or release him from suicide watch.

For her part, defendant contends that the cell used to house suicidal inmates has a minimum of fixtures to reduce the ability of an inmate to harm himself or

---

[5] Defendant states that she cannot be held liable for the absence of toilet paper because it was distributed by the correctional institution, not her.  This fact nevertheless remains relevant for the analysis of the claim pending against her because she knew about that this rule, and defendant repeatedly told her that the lack of adequate toilet paper contributed to the unsanitary conditions in his cell, which she did have the power to correct.  Despite her knowledge of plaintiff's paltry access to toilet paper, defendant failed and refused to authorize a modification to the conditions of his cell (for example, by authorizing him to have a bar of soap to clean his hands and body).

others.  For the same reason, inmates are denied hygiene items, clothing other than a smock, and  a mattress and bedding when placed on suicide watch.  Defendant admits that these conditions could be modified "based on an inmate's request and clinical presentation" upon approval of a clinician such as defendant.  Defendant states that plaintiff could have washed his hands because the cells have a sink (although she admits he had no soap) and that defendant could have eaten his sack meals without touching his food by using the food wrappings.  Defendant denies that she knew about mice crawling on plaintiff.

## Discussion

Defendant first argues that plaintiff's complaint should be dismissed for failure to exhaust administrative remedies.  Under the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), an inmate must exhaust all available administrative remedies before bringing a § 1983 suit.  *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014).  Available remedies are "capable of use for the accomplishment of a purpose: immediately utilizable [and] accessible."  *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (finding exhaustion does not require use of "all " remedies).

To properly exhaust administrative remedies, a prisoner must complete the administrative review process in accordance with the procedural rules as defined by the applicable prison grievance process itself.  *Jones*, 549 U.S. at 218-19.   An

5

inmate satisfies § 1997e(a) by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits."  *Burns*, 752 F.3d at 1141.  It does not matter that the inmate "subjectively believed that there was no point in his pursuing administrative remedies."  *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (en banc).  Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion.  *Jones*, 549 U.S. at 211–12.  Exhaustion is "mandatory" and unexhausted claims must be dismissed without prejudice.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).[6]

"Inmates are excused from exhausting remedies when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures."  *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (internal quotation marks and citation omitted).  "[A] remedy that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy under § 1997(e)(a) . . . ."  *Miller*, 247 F.3d at 740.  Plaintiff must present some evidence, other than mere conclusory statements, to demonstrate that he was precluded from fully exhausting his administrative remedies.  *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).  The PLRA's exhaustion requirement is

---

[6] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice.  *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

satisfied if prison officials decide a procedurally flawed grievance on the merits. *Hammett v. Cofield*, 681 F.3d 945, 947–48 (8th Cir. 2012).

An inmate such as plaintiff who wishes to complain about his treatment while at Southeast Correctional Center must comply with the three-step grievance procedure for the Missouri Department of Corrections.  First, an inmate must file an Informal Resolution Request (IRR) within 15 days of the alleged incident.  If not resolved informally, the correctional center should respond as soon as practicable but within 40 days of receipt of the IRR.  If the inmate receives an unfavorable response to his IRR, he must proceed to the second step and file a formal grievance within seven days of the denial of his IRR.  Once again, the correctional center has 40 days to respond to the grievance.  If the inmate receives an unsatisfactory response to his grievance, the third and file step of the grievance process is for the inmate to file an appeal.  The appeal must be filed within seven days of the denial of the grievance, and any appeal should be resolved within 100 days of receipt.  All three steps are necessary to exhaust the grievance procedure.

Although defendant acknowledges that plaintiff filed a grievance regarding the conditions of his confinement while on suicide watch (IRR SECC-17-303), she nevertheless argues that plaintiff failed to properly exhaust his administrative remedies.  In support of this argument defendant contends that plaintiff's grievance was ultimately denied on appeal because the IRR was not timely filed within 15

days of his release from suicide watch.  While it is true that IRR SECC-17-303 is dated April 24, 2017 and filed May 1, 2017 (long after plaintiff was released from suicide watch), plaintiff states in his IRR that four prior filings of the same complaint were "reported lost" by the mail room and prison staff.  (Doc. 49-4 at 59-62).

In addition to plaintiff's allegation of being prevented from using the grievance procedures in a timely fashion, the evidence does not demonstrate as a matter of law that the prison denied plaintiff's appeal for failure to follow the grievance procedures rather than on the merits.  Plaintiff's IRR was initially denied as "unsupported" on May 22, 2017 after a lengthy discussion and "investigation" of his allegations.  (49-4 at 57-58).  Plaintiff then filed a grievance which was likewise denied on the merits in a Grievance Response issued on June 25, 2017. (49-4 at 55).  The Grievance Response states that plaintiff's allegations as well as his "medical record" were reviewed to determine if "medically necessary health care" was provided to plaintiff.  (49-4 at 55).  The Grievance Response cites the prison policy requiring the removal of all items, (including mattress, clothing, and hygiene items) for the safety of inmates placed on suicide watch to support the denial of plaintiff's grievance.  (49-4 at 55).  Plaintiff appealed the denial of his

grievance on July 20, 2017. (49-4 at 53).[7]  The response to plaintiff's appeal,

entitled Offender Grievance Appeal Response, is dated August 16, 2017, and states

in full as follows:

> Your grievance appeal has been received and reviewed.  As well, your
> healthcare record has been reviewed.  The purpose of this review is to assure
> that timely and appropriate healthcare has been provided to you.  This
> assessment of your healthcare needs may differ from your personal desires.
>
> I understand your one original IRR complaint to be that you allege that the
> mental health staff denied you basic hygiene products for 13 days, from
> September 6, 2016 to September 19, 2016.
>
> Upon review of your healthcare record, grievance records and investigation
> of your concern, I found that you filed the Informal Resolution Request on
> April 28, 2017.  Per the offender grievance policy D5-3.2, the Informal
> Resolution Request must be filed within 15 days from the date of the alleged
> incident.  You claim the incident occurred in September 2016 and did not
> file the IRR until after the 15 day established time frame.
>
> Conclusion: Based on the above information, your grievance appeal is noted,
> as outlined above.  We rely upon the independent, discretionary medical
> judgment of the site providers to determine the needed care, medication, and
> treatment.
>
> This should resolve your grievance.  No further action is indicated at this
> time.
>
> Should your condition change, please address any concerns through the HSR
> process at your facility.

---

[7] While it appears that the appeal was not timely filed within seven days of the denial of
plaintiff's grievance, defendant does not raise this argument on summary judgment, relying
solely on the argument that plaintiff did not exhaust his administrative remedies by timely filing
an IRR.  Because exhaustion is an affirmative defense which must be raised and proven by
defendant, the Court may not grant summary judgment on an argument not made by defendant.
Moreover, any such argument would be rejected by the Court for the same reason as the
argument actually made by defendant.

(49-4 at 54).  There appears to be no dispute that this response amounts to a denial of the grievance, even in the absence of any language clearly stating that the grievance is denied.  Defendant argues that plaintiff's appeal was denied on exhaustion grounds because plaintiff failed to file his IRR within 15 days of being released from suicide watch.  Yet the document does not unambiguously so indicate.[8]  Although this response notes that plaintiff failed to file his IRR within 15 days, it goes on to state that "[w]e rely upon the independent, discretionary medical judgment of the site providers to determine the needed care, medication, and treatment."  (49-4 at 54).  Given the prison's review of plaintiff's medical records and its reliance on "the independent, discretionary medical judgment" of plaintiff's healthcare providers to conclude that plaintiff's appeal should be denied, defendant has not demonstrated that plaintiff's grievance was denied for failure to exhaust administrative remedies rather than on the merits.  This is especially true here, where the alleged failure to timely file came at the first step of the grievance process, yet despite that failure plaintiff's claims were clearly investigated and denied on the merits at each stage of the proceedings prior to the appeal.  As defendant has failed to demonstrate as a matter of law that plaintiff's grievance

---

[8] Defendant cites the affidavit of the record's custodian as evidence that the grievance was denied for failure to follow the institution's grievance procedures.  While this affiant is competent to testify as to the custody of the records, she is not the author of this document and her interpretation of the contents of this document, which differs from the actual language of the document itself, is not admissible evidence as to its contents and will not be considered by the Court.

was denied for failure to comply with the grievance procedures rather than on the merits, defendant's motion for summary judgment on exhaustion grounds must be denied. *See Hammett*, 681 F.3d at 947–48.

A prisoner's conditions of confinement are subject to eighth amendment scrutiny. *Hutto v. Finney*, 437 U.S. 678, 685 (1978); *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir.1982). The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (internal quotation marks and citation omitted); *Cincoski v. Richard*, 418 F. App'x 571, at *1 (8th Cir. 2011) (inmate stated conditions of confinement claim where held on

11

suicide watch without medication, shoes, clothes, underwear, or blankets; his cell
was flooded and freezing; and he was fed gruel. He was strapped in a restraint
chair and asphyxiated; and denied personal hygiene items, which caused him to
develop canker sores, bleeding, and extreme pain for which medication was
denied).

Having reviewed the entire record under the appropriate standards, summary
judgment must be denied as there are disputed, material facts which preclude
judgment as a matter of law in favor of either party.  Given the severity of the
plaintiff's allegations (including the disputed allegations regarding mice and
animal and human waste)[9], the length of time plaintiff was subjected to these
alleged conditions, defendant's acknowledgment that she could have modified
these conditions, plaintiff's insistence that he repeatedly relayed the conditions of
his confinement to defendant and that she refused to rectify them, and plaintiff's
allegation that he was not suicidal and repeatedly told defendant that he was not

---

[9] Although defendant argues that many items were appropriately denied plaintiff because of
defendant's reasonable medical judgment that he could use them to harm himself or others, no
such argument has been (or could be) raised with respect to plaintiff's complaints regarding
human and animal waste and mice.  Defendant's argument that if plaintiff had made such a
complaint then it would be noted in plaintiff's medical file does not convert this disputed issue
into an undisputed one.  Moreover, plaintiff has raised numerous objections, including hearsay
objections, to these records.  While it is possible that they may considered business records at
trial, plaintiff is correct that there are numerous double hearsay statements contained within these
records.  While there may be exceptions which permit these statements to be admitted as not
hearsay or for non-hearsay reasons, it remains defendant's burden to articulate those reasons
upon objection by plaintiff during pretrial filings or at trial.  Even if the records are admitted,
plaintiff remains free to dispute their accuracy before the jury.  It will be up to the jury, not this
Court, to decide which version of events to believe.

suicidal, summary judgment cannot be entered for either party.  Whether plaintiff will prevail on his claim depends on credibility determinations that must be made by a jury, not the Court.  Due to the COVID-19 pandemic, the Court has currently suspended all civil jury trials.  Therefore, this case will not be set for trial at this time.  The Court will send out an Order Setting Case for Trial once jury trials resume.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [40] is denied.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [48] is denied.

This case will be set for jury trial by future Order of this Court.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2020.